```
IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF INDIANA
             HAMMOND DIVISION


NANCY CHAPPEY,              )
                            )
          Plaintiff,        )
                            )
     vs.                    )    CASE NO. 2:08-cv-271
                            )
INEOS USA, LLC,             )
                            )
          Defendant.        )
```

## OPINION AND ORDER

This matter is before the Court on the: (1) Defendant INEOS USA LLC's Motion for Summary Judgment, filed on April 8, 2011 (DE #52); and (2) Defendant INEOS USA LLC's Motion to Exclude Certain Opinions of Dr. Munoz-Price, also filed on April 8, 2011 (DE #54). For the reasons set forth below, the Motion for Summary Judgment (DE #52) is **GRANTED**. The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiff's claim of negligence against Defendant, INEOS USA LLC. The Motion to Exclude Certain Opinions of Dr. Munoz Price (DE #54) is **DENIED AS MOOT**. The Clerk is **FURTHER ORDERED** to **CLOSE** this case.

BACKGROUND

Plaintiff filed her complaint on September 2, 2008, setting forth claims stemming from her contraction of Legionnaires disease

- allegedly from exposure to Legionella bacteria at her workplace (BP), from the water and/or HVAC system. The case was subsequently removed to this Court. Although she originally set forth several claims against two Defendants, INEOS USA LLC and Ineos Oligomly, on October 29, 2008, Defendant, INEOS USA LLC, filed a motion to dismiss. In an order dated March 23, 2009, this Court granted the motion, dismissing Plaintiff's claims arising under the theories of negligence *per se*, nuisance *per se*, private nuisance, public nuisance, product liability, and labor laws. (*See* DE #16.) Additionally, the Court dismissed all claims against Defendant, Ineos Oligomly. The case remained pending only as to Plaintiff's negligence claim against Defendant, INEOS USA LLC.

On April 8, 2011, Defendant, INEOS USA LLC (hereinafter "INEOS"), filed the instant motion for summary judgment. INEOS sets forth 4 main arguments: (1) INEOS did not owe Plaintiff a legal duty; (2) Plaintiff has no evidence to define the standard of care of any duty; (3) there is no evidence that INEOS breached a duty to Plaintiff; and (4) Plaintiff lacks evidence of causation. Plaintiff filed a response on May 31, 2011 (DE #63), and INEOS filed a reply on June 21, 2011 (DE #69). Consequently, this motion is fully briefed and ripe for adjudication.

On the same day that the motion for summary judgment was filed, INEOS also filed a motion to exclude certain opinions of Dr.

Munoz-Price, Plaintiff's proffered expert witness. It is Dr. Munoz-Price's opinion that Plaintiff, Nancy Chappey, contracted Legionnaires' disease as a result of her exposure to a subspecies of bacteria known as Legionella *pneumophila* serogroup 5 at Plaintiff's workplace located at 2300 Standard Avenue in Whiting, Indiana (the "Building"). This motion is also fully briefed, and ready for adjudication.

DISCUSSION

The standards that generally govern summary judgment motions in federal court are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *NUCOR Corp.*

v. *Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but must set forth specific facts showing that there is a genuine issue for trial.[1] *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (emphasis in original) (citing *Anderson*, 477 U.S. at 248).

---

[1] Plaintiff cites *Northern Indiana Public Service Co. v. Dabagia*, 721 N.E.2d 294, 301 (Ind. Ct. App. 1999), for the proposition that "[w]hen the defendant is the moving party, the defendant must show that the undisputed facts negate at lease [sic.] one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claims." (DE #63, p. 3.) This standard is applicable to Indiana state court actions, but not this federal case.

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley Cnty. REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Undisputed Facts

Pursuant to the relevant rules, INEOS submitted a numbered statement of material facts, contending those material facts are not genuinely disputed. (*See* DE #55.) However, Plaintiff's response is deficient.

Local Rule 56.1 provides that a party opposing summary judgment must file a response brief and "any materials that the party contends raise a genuine dispute." L.R. 56.1(b)(1)(B).

5

Additionally, the response brief or its appendix must specifically "include a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary." L.R. 56.1(b)(2). Finally, this Court's own Guidelines for Briefing Summary Judgment Motions provide that the opposing party's statement of genuine issues should be in the form of numbered paragraphs, each corresponding to the paragraph of the moving party's statement. (Court Guidelines.) "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the 'Statement of Genuine Issues' of the opposing party." *Id.*

Instead of following these established rules, Plaintiff merely sets out one page in her response entitled "Facts" which largely restates facts already set forth by INEOS (without citing INEOS' Statement of Material Facts). Indeed, Plaintiff states that she "incorporates Defendant's Statement of Material Facts with respect to her Response," and although she goes on to state she "will designate additional facts . . . which are in dispute, where appropriate," she never identifies which facts, if any, are in dispute. (DE #63, p. 2.) The only evidence cited by Plaintiff is evidence already designated by INEOS. In her Designation of Evidence in Support of her Response (DE #64), Plaintiff only refers to 8 documents already designated and attached by INEOS. Because

6

Plaintiff has not properly disputed any of the facts identified by INEOS in its statement of material facts (indeed, she has endorsed them), and has not set forth any additional facts or evidence, the Court has no choice but to take the facts in INEOS' statement as admitted. L.R. 56.1.

Consequently, the following recitation constitutes the undisputed facts of this case. On April 1, 2005, INEOS' predecessor, O&D USA LLC, leased a two-story commercial office building located at 2300 Standard Avenue in Whiting, Indiana, to BP Products North America ("BP"). (Ex. A, Sokol Dec., ¶ 3.) Additionally, O&D and BP executed a Shared Services Framework Interface Agreement ("SSFIA") and Utilities Framework Interface Agreement ("UFIA") that were incorporated into the Lease and described the terms and conditions governing BP's occupancy of the Building. (Ex. A, ¶¶ 4-5; Exs. A.1, A.2, A.3.) Pursuant to the SSFIA and UFIA, executed as part of the Lease, INEOS conferred to BP full control and possession of the Building, including full control over the water and heating, ventilation, and air conditioning ("HVAC") systems for the Building. (Ex. A, ¶¶ 7-8; A.2 at Schedule 5, pp. 28-29.)

Plaintiff, Nancy Chappey, was an employee of BP, and she worked on the second floor of the Building. (Compl. ¶¶ 1,3.) In September 2006, Plaintiff's daughter had a baby, and Plaintiff

7

visited her in the hospital over the course of 2 days. (Ex. B, Chappey Dep., pp. 148-49.) On September 16, 2006, Plaintiff visited the Hammond Clinic, complaining of nausea and diarrhea that she had been experiencing for about 2 weeks. (Ex. D, Fedoruk Dec., ¶ 4(a).) Her gastrointestinal condition worsened, and she had abdominal cramping and fatigue. Antibiotics gave her no relief. (Ex. D, ¶ 4(b).) On November 2, 2006, Plaintiff underwent an outpatient colonoscopy. (Ex. D, ¶ 4(c).)

On November 18, 2006, Plaintiff began to experience symptoms of pneumonia that progressively worsened, ultimately leading to her hospitalization on November 21, 2006. (Ex. B, pp. 72-74.) Dr. Luisa Silvia Munoz-Price was Plaintiff's treating infectious disease physician. (Ex. E, Munoz-Price Dep., pp. 67-68; Ex. E.1, curriculum vitae.) On November 25, 2006, Dr. Munoz-Price ordered a Legionella urinary antigen test, and Plaintiff tested positive for Legionella *pneumophila* serogroup 1 bacteria. (Ex. D ¶¶ 4(d) and 4(f); Ex. F.) Dr. Munoz-Price diagnosed Plaintiff with Legionnaires' disease. (Ex. F, p. 2.)

The test used to analyze Plaintiff's urine sample was the BinaxNOW Legionella Urinary Antigen Test. (Ex. J, Clark Dec., ¶ 4.) As part of her expert report, Dr. Munoz-Price cited an article by Chikako Okada, *et al.*, entitled "Cross-Reactivity and Sensitivity of Two *Legionella* Urinary Antigen Kits, Biotest EIA and

Binax NOW, to Extracted Antigens from Various Serogroups of L. *Pneumophila* and Other *Legionella* Species" (the "Okada Article"), dated October 28, 2001. (Ex. F.1.) The Okada Article concludes that the BinaxNOW urinary antigen test does not exhibit cross-reactivity between Legionella *pneumophila* serogroup 1 and Legionella *pneumophila* serogroup 5. (F.1, pp. 52-53.) That same article also concludes that the BinaxNOW urinary antigen test does not exhibit cross-reactivity between Legionella *pneumophila* serogroup 1 and any serogroup of Legionella *bozemanii*. *Id.*

Dr. Munoz-Price did not perform clinical tests to isolate the bacteria found in Plaintiff and compare it to any alleged environmental source. (Ex. F, p. 4; Ex. D.2, pp. 7, 10.) Dr. Munoz-Price testified that one of the bases for her opinion that Plaintiff's Legionnaires' disease was caused by exposure to bacteria in the Building was the concentration of bacteria found in the Building. (Ex. E, pp. 139-41; Ex. F, p. 5.) Dr. Munoz-Price did not speak to Plaintiff about her alleged exposure to Legionella bacteria, either when treating her in the hospital or while preparing Dr. Munoz-Price's opinions in this case. (Ex. E, p. 66; Ex. B, pp. 85-86.)

When INEOS learned that Plaintiff had been diagnosed with Legionnaire's disease, INEOS immediately closed the Building and tested the water supply. (Ex. A, ¶ 12.) On November 30, 2006,

INEOS retained Pekron Consulting, Inc. ("Pekron"), to sample the Building's water and HVAC systems and a nearby cooling tower. (Ex. A, ¶ 12; Ex. G, Pekron Dec., ¶ 4.) Pekron collected water samples from the Building's water and HVAC systems, then packaged and shipped the samples to PathCon Laboratories ("PathCon") for analysis. (Ex. G, ¶ 5; Ex. I, Kirkland Dec., ¶¶ 4-5.)

PathCon's analysis did not find Legionella *pneumophila* serogroup 1 anywhere in the Building or the cooling tower.[2] (Ex. I at ¶ 5, incorporating PathConReport; Exs. I.1 and I.2; Ex. H, Wade Dec., ¶ 3, incorporating Wade Report, Ex. H.1.) However, PathCon's analysis did reveal Legionella *pneumophila* serogroup 5 and Legionella *bozemanii* (a different species of Legionella bacteria) in various locations in the Building. (Ex. I.1; Ex. H.1, p. 1; Ex. D, p. 4; Ex. F, p. 2.) PathCon's analysis did not differentiate between the concentration of Legionella *pneumophila* serogroup 5 and Legionella *bozemanii* found in the water samples. (Ex. I.1, pp. 4-7.)

Prior to PathCon's analysis, INEOS had no knowledge of any Legionella contamination in the Building. (Ex. A, ¶ 14.) In late December 2006, the Indiana State Department of Health ("ISDH")

---

[2] A temporary air conditioner that was purportedly used in the Building for an unspecified period of time prior to Plaintiff's illness was not available to be sampled. (Ex. G, ¶ 6; Ex. E, pp. 101-02.)

investigated Plaintiff's Legionnaires' disease in coordination with the CDC and the Lake County Health Department. (Ex. C, Richards Dec., ¶¶ 2-5.) The ISDH accepted Plaintiff's diagnosis of a Legionella pneumophila serogroup 1 bacterial infection. (*Id.* at ¶ 11.) The ISDH did not discover any other instances of confirmed human cases of Legionella bacteria that were related to Chappey's exposure, and concluded that Plaintiff's illness may have been an "isolated case" of Legionnaires' disease. (Ex. C, ¶¶ 12-13.)

INEOS retained Green Industries, Inc., to perform remediation of the Building's water and HVAC systems, including flushing the Building's water system with a heavy concentration of chlorine twice. (Ex. A, ¶ 15.) Post-treatment test results were negative for any species of Legionella bacteria. (*Id.* at ¶ 16.) On January 16, 2007, the Building was again available for occupancy. (*Id.* at ¶ 17.)

Regarding Legionnaires' disease - it occurs as a result of inhaling aerosolized Legionella bacteria or micro aspiration of contaminated water. (Ex. D.2, p. 3.) There are more than 50 different species of Legionella bacteria, and about 20 have been reported to cause human infections. (*Id.* at 3.) The most common cause of Legionnaires' disease is the Legionella *pneumophila* species. *Id.* There are 16 different serogroups (or subspecies) of Legionella *pneumophila. Id.* Legionella pneumophila serogroup 1 is

11

the most frequent cause of Legionnaires' disease in humans. (Ex. D.2, p. 3; Ex. F, p. 4.) Studies have shown that Legionella pneumophila serogroup 1 is responsible for 70% to 90% of all cases of Legionnaires' disease. (Ex. D.2, p. 3.) In contrast, studies have shown that infections due to Legionella pneumophila serogroup 5 are very rare. (Ex. D.2, p. 8.) Between 1980 and 1989, there were only six reported cases of Legionnaires' disease due to Legionella pneumophila serogroup 5. *Id.* Legionella bacteria are common in natural and man-made aquatic environments, with studies showing that water systems in 32% of residential buildings, 70% of hospitals, and 40%-60% of commercial buildings have some level of contagion. (Ex. H.1, p. 2.)

Due to its prevalence in the environment, the CDC does not recommend routine sampling for Legionella bacteria in water and/or HVAC systems. (Ex. H.1, p. 3.) There are no governmental regulatory requirements to routinely test commercial office buildings' water and/or HVAC systems for the presence of Legionella bacteria, and there are no regulatory standards for the safe number of Legionella pneumophila bacteria found in water systems. *Id.*

Once a diagnosis of Legionnaires' disease is made, the CDC recommends surveillance to determine if other persons with similar exposure opportunities become symptomatic. (Ex. H.1, p. 3.) Here, after Plaintiff was diagnosed with Legionnaires' disease, INEOS immediately closed the Building and retained Pekron and PathCon to

12

sample and test the Building's water and HVAC systems for Legionella bacteria.

Finally, as pointed out by INEOS, the only statement in Plaintiff's "Facts" section that was not taken directly from INEOS' Statement is "[a]s a further condition of the executed lease, Defendant assumed the obligation to keep the premises in good repair and in a tenantable condition." (DE #63, p. 2.) INEOS asserts that this single sentence, taken out of context, misrepresents the Lease because it ignores the SSFIA and UFIA, incorporated explicitly into the Lease and setting forth the services INEOS and BP were each contractually obligated to perform. (Ex. A, ¶¶ 3-8; A.1, 1.2, 1.3.) As recited earlier in this section, the SSFIA and UFIA conferred to BP full control and possession of the Building and, specifically, full control over the water and HVAC systems for the Building. (Ex. A, ¶¶ 7-8; A.2 at Schedule 5, pp. 28-29.)

## The Negligence Claim Fails as a Matter of Law Because Plaintiff Cannot Prove that INEOS Owed Plaintiff a Legal Duty

A federal court sitting in diversity, like this one, applies the substantive law of the state in which the Court sits. *See Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 633 (7th Cir.

2002) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Neither party disputes that Indiana law applies here.

Under a negligence theory, a plaintiff must establish three elements:

> (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff, (2) a failure of the defendant to conform his conduct to the requisite standard of care required by the relationship, and (3) an injury to the plaintiff proximately caused by the breach.

*Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991) (citing *Miller v. Griesel*, 308 N.E.2d 701, 706 (Ind. 1974)). Whether Indiana law recognizes a legal duty obligating INEOS "to conform its conduct to a certain standard for the benefit of the plaintiff is a question of law." *Id.*

Plaintiff's singular argument that INEOS owed her a legal duty arises from language in the Lease:

> Landlord, at its sole cost and expense, shall keep the Premises in *good repair and tenantable condition* and shall promptly and adequately repair any and all damage to the Premises excepting, however, any damage caused by Tenant or any of its employees, contractors, agents, invitees or licensees, including replacing or repairing all damaged or broken glass, fixtures and appurtenances which Tenant shall repair, at its sole cost and expense . . . .

Ex. A.1, p. 4 (emphasis added). Plaintiff argues that INEOS failed to keep the Building in tenantable condition when it allowed the

14

presence of Legionella bacteria in the Building.  (DE #63, p. 4.)
The phrase "tenantable condition" is not defined in the Lease.

Yet, the Lease expressly provides that it is "subject in all respects to the terms and conditions of the Framework Agreement. In the event of any ambiguity or inconsistency between this Lease and the Framework Agreement, the terms of the Framework Agreement shall supersede, govern and prevail." (Ex. A.1, p. 18.)  Schedule 5 of the SSFIA specifically confers to BP, as the Supplier, responsibility for "[m]anagement and maintenance of Site infrastructure including buildings, roads, drainage, car parks, fencing, landscaping, pest control, *plumbing, heating/air conditioning*, and joinery and general repairs."  (Ex. A.2 at Schedule 5, pp. 28-29 (emphasis added).)  Plaintiff contends that the Building was contaminated with bacteria detected in the hot water system.  (Compl. ¶¶ 5, 7, 34(I).)  The SSFIA is the only document that specifically refers to the water and HVAC systems. As the Court in *Premier Title Co. v. Donahue*, 765 N.E.2d 513, 518 (Ill. App. Ct. 2002), stated, Plaintiff's "interpretation disregards the rule that, in the event of a conflict, specific provisions are entitled to more weight in ascertaining the parties' intent than general provisions."  In other words, "[w]e must accept an interpretation of the contract that harmonizes all the various parts so that no provision is deemed conflicting with, repugnant to, or neutralizing of any other provision.  When a contract

contains general and specific provisions relating to the same subject, the specific provision controls." *Turner v. Board of Aviation Com'rs*, 743 N.E.2d 1153, 1167 (Ind. Ct. App. 2001) (citation omitted). "In construing a contract, we presume that all provisions were included for a purpose, and if possible we reconcile seemingly conflicting provisions to give effect to all provisions. . . [w]hen a contract contains general and specific provisions relating to the same subject, the specific provision controls." *Salcedo v. Toepp*, 696 N.E.2d 426, 435-36 (Ind. Ct. App. 1998). Because INEOS relies upon a specific provision that addresses responsibility for the water and HVAC systems (versus Plaintiff's reliance upon the general Lease clause that INEOS should keep the Building in a "tenantable condition"), INEOS' interpretation prevails.

As cited by INEOS, this case is similar to *Rogers v. Grunden*, 589 N.E.2d 248, 254 (Ind. Ct. App. 1992). In *Rogers*, the Grundens leased property to Ramsey Popcorn Company, and entered into an oral agreement with Ramsey allowing Ramsey's employees to use an auger (owned by the Grundens), on the property. *Id.* at 252. A Ramsey employee was electrocuted while working, and using the auger. *Id.* The employee's estate sued the Grundens, *inter alia*, under a negligence theory claiming the Grundens owed Rogers a legal duty because they owned the land and the auger. *Id.* at 251. The Court of Appeals affirmed the finding of summary judgment, finding

16

generally, "a landlord who gives a tenant full control and possession of the leased property will not be liable for personal injuries sustained by the tenant or other persons lawfully upon the leased property." *Id.* at 254. In that case, because the estate "failed to demonstrate specific facts showing the Grundens owed a duty to Rogers under any cognizable legal theory," summary judgment was proper. *Id.* Similarly, in this case INEOS leased the Building to BP and gave BP discretion and control over the Building by entering into the SSFIA which obligated BP to manage certain aspects of the building, including the water and HVAC systems. (Ex. A.1, A.2, Ex. A at ¶¶ 7-8.) Plaintiff has failed to point to any facts showing that INEOS owed her a legal duty.[3] Consequently, the claim for negligence fails.

Plaintiff contends, without citing any legal support, that she was a third party beneficiary of the Lease; therefore, INEOS owed

---

[3]Plaintiff contends that because INEOS immediately closed the Building and retained an expert to evaluate the Building's water and HVAC systems, this necessarily proves that INEOS was really in possession and control of the Building. (DE #63, p. 5.) This argument is not supported by any case law or other authority. Moreover, to the extent Plaintiff is arguing that INEOS' subsequent remedial measures is evidence of its negligence, it is well establish that such subsequent remedial measures are not admissible as evidence of negligent or culpable conduct. *See* Fed. R. Evid. 407. Only evidence which would be admissible at trial may be considered in summary judgment proceedings. *See First Nat'l Bank Co. v. Insurance Co. of North America*, 606 F.2d 760, 766 (7th Cir. 1979). As such, the Court does not consider INEOS' subsequent testing and remediation of the Building evidence of negligence.

her a duty to keep the premises in "tenantable condition." (DE #63, p. 4.) Aside from the aforementioned problem that the Lease does not define "tenantable" (nor has Plaintiff proposed any definition), a person's status as a direct or indirect third-party beneficiary of a contract dictates whether that person may pursue rights under the contract. *American United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 930-31 (7th Cir. 2003). However, here, Plaintiff does not seek to pursue rights under the Lease. Rather, she brings only a claim of negligence. Thus, her third party beneficiary argument is inapplicable.

Plaintiff also argues that "Defendant concedes in their [sic.] Brief that plaintiff was a business invitee and as such, defendant owed plaintiff a duty to exercise reasonable care in discovering any harmful condition." (DE #63, p. 5 (citing INEOS Br., DE #53, p. 10.)) This is an improper of reading of INEOS' argument - INEOS made no such concession. Rather, INEOS used the business invitee analysis to support an argument that, even if INEOS owed Plaintiff a legal duty, Plaintiff had not met her burden of establishing that INEOS breached a duty. (DE #53, p. 10.) The Court need not even reach this issue of whether Plaintiff can prove that INEOS breached a duty, because, as established earlier, Plaintiff has failed to prove that any duty existed between INEOS and Plaintiff. Nor does this Court reach the issue of causation. *See, e.g., Goldsberry v. Grubbs*, 672 N.E.2d 475, 477 n.1 (Ind. Ct. App. 1996) (noting

because plaintiff failed to prove defendant owed plaintiff a duty of care, the Court need not reach the issues of breach and proximate cause).

Finally, because summary judgment in favor of INEOS is warranted, INEOS' Motion to Exclude Certain Opinions of Dr. Munoz-Price is **DENIED AS MOOT**.

CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment (DE #52) is **GRANTED**. The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiff's claim of negligence against Defendant, INEOS USA LLC. The Motion to Exclude Certain Opinions of Dr. Munoz Price (DE #54) is **DENIED AS MOOT**. The Clerk is **FURTHER ORDERED** to **CLOSE** this case.

DATED: August 17, 2011              RUDY LOZANO, Judge
                                    United States District Court